```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

```
                                )
JOHN MICHAEL LeBLANC,            )
                                )
     Plaintiff,                 )
                                )
v.                              )   2:13-cv-02001-JPM-tmp
                                )
BANK OF AMERICA, N.A.;          )
BAC HOME LOANS SERVICING, LP    )
f/k/a COUNTRYWIDE HOME LOANS    )
SERVICING, LP, CORP.; and       )
RUBIN LUBLIN TN, PLLC,          )
                                )
     Defendants.                )
```

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANT BANK OF AMERICA'S MOTION TO DISMISS

Before the Court is the Motion to Dismiss of Defendant Bank of America, N.A.[1] ("Bank of America"), filed January 8, 2013. (ECF No. 5.)  Plaintiff John Michael LeBlanc ("LeBlanc") responded in opposition on February 7, 2013.  (ECF No. 9.)  Bank of America filed a Reply on February 21, 2013.  (ECF No. 13.)

For the following reasons, Bank of America's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

This case arises out of the attempted foreclosure of LeBlanc's home, which is located at 3786 Old Brownsville Road,

---

[1] On July 1, 2011, Bank of America, N.A., and BAC Home Loans Servicing, LP, merged.  (ECF No. 5 at 1 n.1.)  Bank of America, N.A., therefore, "responds for itself and as successor by merger to BAC Home Loans Servicing, LP." (Id.)

Memphis, Tennessee 38135 (the "Brownsville Property").  (See Compl., ECF No. 1-2, at PageID 9-18; ECF No. 1 at 2.)[2]  The following facts are alleged in LeBlanc's Complaint.

LeBlanc purchased the Brownsville Property in 2005.  (ECF No. 1-2 ¶ 8.)  In 2006, LeBlanc sought to refinance his home through a loan with Countrywide Home Loans, Inc.  (Id.)  To obtain the loan, LeBlanc executed a promissory note (the "Note"), a deed of trust (the "Deed of Trust"), and other related documents.  (Id.)  The adjustable-rate loan had a principal amount of approximately $114,300 at an initial annual percentage rate of 10.8% and a maximum annual percentage rate of 17.8% over a thirty-year term.  (Id. ¶ 9.)  Monthly payments on the loan were approximately $1,071.21.  (Id. ¶ 10.)  "Defendant Bank of America later became the servicer of the loan."  (Id. ¶ 8.)

After experiencing a period of financial difficulty "around 2007 or 2008," LeBlanc sought a loan modification from Bank of America, which is a participant in the Home Affordable Mortgage Program ("HAMP").[3]  (Id. ¶¶ 11-12.)  LeBlanc asserts that he was eligible for relief under HAMP.  (Id. ¶ 16.)  In approximately

---

[2] When Electronic Case Filings contain multiple documents, the Court will refer to the Page Identification ("PageID") numbers on the top right of the document.

[3] Bank of America asserts that there is no private right of action under HAMP. (ECF No. 5-1 at 5.)  The Court need not decide whether there is a private right of action under HAMP because it does not appear that LeBlanc bases his claims on his alleged eligibility for a loan modification under HAMP.  (See Compl., ECF No. 1-2, at PageID 9-18.)

2009, LeBlanc began receiving assistance with his request for a loan modification from Ms. Jackson, a housing counselor at the Frayser Community Development Corporation (the "FCDC Housing Counselor"), and was granted a temporary loan modification. (Id. ¶¶ 17-18.)  LeBlanc's monthly payments were reduced to $769.22, and he executed paperwork to have this amount drafted automatically from his bank account on a monthly basis.  (Id. ¶¶ 18-19.)  LeBlanc asserts that Bank of America made monthly drafts of this amount for over two years, occasionally drafting this amount twice in the same month.  (Id. ¶ 19.)

During this time, LeBlanc continued to seek a permanent modification of his loan and had the FCDC Housing Counselor call Bank of America every month to check the status of his application for a permanent loan modification.  (Id. ¶¶ 20-21.) During one of these calls, a Bank of America representative told LeBlanc and the FCDC Housing Counselor that LeBlanc would receive a permanent loan modification and that he "should temporarily stop making payments until [Bank of America] could calculate the correct payment for the permanent loan modification."  (Id. ¶ 22.)  The representative further stated that the recalculation process would take no more than three months.  (Id. ¶ 23.)

In reliance on the representative's statement, LeBlanc stopped making payments on the loan.  (Id.)  LeBlanc states that

had he understood that Bank of America was not calculating a new loan payment in the intervening months, he "would have continued making payments and avoided the default." (<u>Id.</u> ¶ 25.) Approximately two months after LeBlanc's conversation with the Bank of America representative and the FCDC Housing Counselor, Bank of America asserted that the loan was in default and threatened to foreclose. (<u>Id.</u> ¶ 24.) LeBlanc contacted the FCDC Housing Counselor for help in stopping the foreclosure. (<u>Id.</u> ¶ 26.) LeBlanc then filed for Chapter 13 bankruptcy in order to halt the foreclosure process. (<u>Id.</u> ¶ 27.) After filing for bankruptcy, LeBlanc and his bankruptcy attorney continued to seek a permanent loan modification from Bank of America. (<u>Id.</u> ¶¶ 28-30.) On May 12, 2012, Bank of America denied LeBlanc a permanent loan modification, asserting that LeBlanc "had not provided the documents it requested." (<u>Id.</u> ¶ 31.)

On November 26, 2012, LeBlanc filed a Complaint against Defendants Bank of America, N.A., BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP Corp., and Rubin Lubin TN, PLLC[4] (collectively, "Defendants"), in the Chancery Court for Shelby County, Tennessee. (<u>Id.</u> at PageID 9-18.) Defendants removed this action to federal court on January 2,

---

[4] On March 25, 2013, Defendant Rubin Lublin TN, PLLC ("Rubin Lublin") moved for judgment on the pleadings. (ECF No. 18.) On May 13, 2013, this Court granted Rubin Lublin's Motion for Judgment on the Pleadings, dismissing all claims by LeBlanc against Rubin Lublin with prejudice. (ECF No. 19.)

2013.  (ECF No. 1.)  On January 8, 2013, Defendant Bank of America, on behalf of itself and as successor by merger to BAC Home Loans Servicing, LP, filed the instant Motion to Dismiss LeBlanc's Complaint pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).  (See ECF No. 5-1 at 1 n.1.)

## II. CHOICE OF LAW

LeBlanc's Complaint contains the following causes of action against Defendants:  (1) a violation of Regulation Z, 12 C.F.R. § 226.39, of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. (ECF No. 1-2 ¶¶ 35-36); a violation of the Tennessee Consumer Protection Act of 1977 (the "TCPA"), Tenn. Code Ann. §§ 47-18-101 et seq. (id. ¶¶ 37-43); a common-law breach-of-contract claim (id. ¶¶ 44-46); (4) a common-law promissory-estoppel claim (id. ¶¶ 47-51); and (5) a common-law negligent-misrepresentation claim (id. ¶¶ 52-55).

This Court has federal-question jurisdiction over LeBlanc's TILA claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over LeBlanc's state-law claims pursuant to 28 U.S.C. § 1367(a).  "A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction."  Chandler v. Specialty Tires of Am. (Tennessee), Inc., 283 F.3d 818, 823 (6th Cir. 2002) (quoting

Super Sulky, Inc. v. U.S. Trotting Ass'n, 174 F.3d 733, 741 (6th Cir. 1999)) (internal quotation marks omitted).

A federal court sitting in diversity applies "state substantive law and federal procedural law." Degussa Admixtures, Inc. v. Burnett, 277 F. App'x 530, 532 (6th Cir. 2008) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Further, in diversity matters, a federal court must apply the choice-of-law rules of the forum state. Andersons, Inc. v. Consol, Inc., 348 F.3d 496, 501 (6th Cir. 2003) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).

As to contracts, "Tennessee follows the rule of lex loci contractus, meaning that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent . . . ." Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co., 823 F. Supp. 2d 786, 801 (W.D. Tenn. 2011) (quoting Se. Tex. Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 672 n.8 (6th Cir. 2006)) (internal quotation marks omitted). Tennessee courts will, however, "honor a choice of law clause if the state whose law is chosen bears a reasonable relation to the transaction." Bourland, Helfin, Alvarez, Minor & Matthews, PLC v. Heaton, 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012) (quoting Wright v. Rains, 106 S.W.3d 678, 681 (Tenn. Ct. App. 2003)) (internal quotation marks omitted). In the instant case, the deed of trust and the note

6

were both executed in Tennessee and do not demonstrate any intent to apply the law of another jurisdiction. (See ECF No. 5-2; ECF No. 5-3 at 8.)

As to torts, "Tennessee follows the 'most significant relationship' rule, which provides that 'the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation.'" Rhynes v. Bank of Am., No. 12-2683, 2013 U.S. Dist. LEXIS 42713, at *7 (W.D. Tenn. Mar. 26, 2013) (quoting Hicks v. Lewis, 148 S.W.3d 80, 86 (Tenn. Ct. App. 2003)). LeBlanc's alleged injuries occurred in Tennessee, and neither party asserts that the law of another jurisdiction should apply. Accordingly, LeBlanc's contract and tort claims will be decided under the substantive law of Tennessee.[5]

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Motions to dismiss pursuant to Rule 12(b)(6) test "the sufficiency of the claim for relief, 'and as such, [] must be understood in conjunction with Rule 8(a), which sets out the federal standard for pleading.'" Asentinel LLC v. Info Grp., Inc., No. 10-2706-D/P, 2011 WL 3667517, at *2 (W.D. Tenn. Aug.

---

[5] Neither party asserts that the law of any other state should apply to the instant case.

7

3, 2011) (quoting Hutchison v. Metro. Gov't, of Nashville & Davidson, Cnty., 685 F. Supp. 2d 747, 748–49 (M.D. Tenn. 2010)). Pursuant to Rule 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where a plaintiff asserts a claim of fraud, however, the claim is subject to the higher pleading standard articulated in Rule 9(b). See Republic Bank & Trust Co. v. Bear Stearns & Co., 683 F.3d 239, 247 (6th Cir. 2012). Under Rule 9(b), a plaintiff must "(1) [] specify the allegedly fraudulent statements; (2) [] identify the speaker; (3) [] plead when and where the statements were made; and (4) [] explain what made the statements fraudulent." Id.

To survive a motion to dismiss for failure to state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." Keys v. Humana, Inc., 684 F.3d 605, 608 (6th Cir. 2012) (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011)

8

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  As a result, the "complaint must contain either direct or inferential allegations with respect to all material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

On a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (quoting Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008)) (internal quotation marks omitted).  A court may not dismiss a complaint for failure to state a claim "based on disbelief of a complaint's factual allegations."  Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001).  The court, however, "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice."  In re Travel Agent, 583 F.3d at 903 (alteration in original) (citation omitted) (internal quotation marks omitted).

Pursuant to Rule 12(d), where "matters outside the pleading are presented to and not excluded by the court," a Rule 12(b)(6) motion to dismiss will be treated as a Rule 56 motion for summary judgment.  Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d

9

1102, 1104 (6th Cir. 2010) (quoting Fed. R. Civ. P. 12(d))
(internal quotation marks omitted).  Although "[a]ll parties
must be given a reasonable opportunity to present all the
material that is pertinent to the motion," Fed. R. Civ. P.
12(d), district courts remain free to refuse to consider
materials outside the pleadings, see Max Arnold & Sons, LLC v.
W.L. Hailey & Co., 452 F.3d 494, 503 (6th Cir. 2006).  In
analyzing a Rule 12(b)(6) motion to dismiss, a court may
"consider exhibits attached [to the complaint], public records,
items appearing in the record of the case and exhibits attached
to defendant's motion to dismiss so long as they are referred to
in the complaint and are central to the claims therein, without
converting the motion" into a motion for summary judgment.
Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680-81 (6th
Cir. 2011) (alteration in original) (quoting Bassett v. Nat'l
Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008))
(internal quotation marks omitted).

**IV. ANALYSIS**

LeBlanc's TILA, TCPA, breach-of-contract, promissory-
estoppel, and negligent-misrepresentation claims are addressed
in turn.

**A. TILA Claim**

Pursuant to TILA and Regulation Z, within thirty days of
the transfer of a consumer mortgage loan, the assignee of that

loan must notify the borrower that the loan has been transferred.  15 U.S.C. § 1641(g); 12 C.F.R. § 226.39.

In his Complaint, LeBlanc states that Defendants violated Regulation Z of TILA "[b]y failing to notify Mr. LeBlanc of the change in ownership of his mortgage."  (ECF No. 1-2 ¶ 36.)  Bank of America argues that LeBlanc has failed to state sufficient factual information to support a TILA claim or to "allow the Court to determine if [Bank of America] had to comply with that statute or whether the statute of limitations applies."  (ECF No. 5-1 at 6.)  In response, LeBlanc argues that because the question of "[i]f, when, and to whom a transfer of ownership of the loan documents that are the subject of this litigation occurred is information that is totally within the control of the Defendant" (ECF No. 9 at 6), LeBlanc's statement that he was not notified of the transfer of his mortgage loan is sufficient to survive Bank of America's Motion to Dismiss (id. at 6-7).

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that LeBlanc has stated a claim for relief under TILA and Regulation Z.  The relevant information is within Bank of America's control and will only become available to LeBlanc during discovery.  Requiring LeBlanc to provide more information for his TILA claim at this stage of litigation would require LeBlanc to plead more information than he could be expected to have, and would foreclose the possibility of LeBlanc raising a TILA claim.  See Rhynes, 2013 U.S. Dist. LEXIS 42713,

at *41-42; <u>Humphreys v. Bank of Am. Corp.</u>, No. 11-2514-STA-tmp, 2012 WL 1022988, at *10 (W.D. Tenn. Mar. 26, 2012). Accordingly, Plaintiff has sufficiently pled a TILA claim under Rule 8(a).

Therefore, Bank of America's Motion to Dismiss is DENIED as to LeBlanc's TILA claim.

**B. TCPA Claims**

In order to recover under the TCPA, a plaintiff must demonstrate (1) "an ascertainable loss of money or property"; (2) resulting from "an unfair or deceptive act or practice"; (3) that is "declared to be unlawful" under the provisions of the TCPA.  Tenn. Code Ann. § 47-18-109(a)(1).  Tennessee Code Annotated Section 47-18-104(b)(27) makes unlawful "any act or practice which is deceptive to the consumer."  Although Section 47-18-104(b)(27) of the TCPA does not define "unfair or deceptive," the Tennessee Supreme Court has described a deceptive act or practice as "a material representation, practice, or omission likely to mislead . . . reasonable consumer[s] to their detriment."  <u>Fayne v. Vincent</u>, 301 S.W.3d 162, 177 (Tenn. 2009) (alterations in original) (quoting <u>Ganzevoort v. Russell</u>, 949 S.W.2d 293, 299 (Tenn. 1997)) (internal quotation marks omitted).

TCPA claims are subject to the higher pleading standard articulated in Rule 9(b).  <u>Parris v. Regions Bank</u>, No. 09-2462, 2011 WL 3629218, at *8 (W.D. Tenn. Aug. 17, 2011); <u>accord</u> <u>Metro.</u>

Prop. & Cas. Ins. Co. v. Bell, No. 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005); cf. Glanton v. Bob Parks Realty, No. M2003-01144-COA-R3-CV, 2005 WL 1021559, at *6 (Tenn. Ct. App. April 27, 2004) (citing Harvey v. Ford Motor Credit Co., 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999)).  Accordingly, LeBlanc must "set forth specific fraudulent or deceptive acts rather than general allegations." AGFA Photo USA Corp. v. Parham, No. 1:06-cv-216, 2007 WL 1655891, at *11 (E.D. Tenn. June 5, 2007).

     LeBlanc asserts that Defendants violated the TCPA by: (1) "attempting to collect double [mortgage] payments" from LeBlanc (Compl., ECF No. 1-2, ¶ 38); (2) failing to cooperate in the loan-modification review (id. ¶ 39); (3) delaying notice regarding the status of a permanent loan modification and moving forward with the foreclosure of the Brownsville Property (id. ¶ 40); and (4) reneging on their promise to grant LeBlanc a permanent loan modification (id. ¶ 41).  Bank of America argues that LeBlanc cannot state a claim for which relief can be granted because the TCPA does not apply to foreclosure disputes (ECF No. 5-1 at 7-8); because the TCPA does not apply to credit terms of a transaction (id. at 8-9); because LeBlanc has not met the Rule 9(b) pleading standard (id. at 9-11); and because LeBlanc has not sufficiently pled that he lost money or property as a result of Bank of America's alleged violation of the TCPA (id. at 11).

     LeBlanc's TCPA claims are addressed in turn.

13

### 1. Double Drafts

LeBlanc asserts that Bank of America's drafting of mortgage payments twice in the same month constitutes an unfair and deceptive act and practice prohibited by the TCPA. (Compl., ECF No. 1-2, ¶¶ 19, 38.) Bank of America argues that LeBlanc has not pled his TCPA claim with the required particularity because LeBlanc has not identified or cited one of the "enumerated specific unfair or deceptive acts or practices that constitute violations of the TCPA." (ECF No. 5-1 at 10.) Furthermore, Bank of America states that the "catch-all provision" of the TCPA, Tenn. Code Ann. § 47-18-104(b)(27), which could arguably cover LeBlanc's claim, vests enforcement solely in the Attorney General of Tennessee. (Id.); see Tenn. Code Ann. § 47-18-104(b)(27) ("Engaging in any other act or practice which is deceptive to the consumer or to any other person; provided, however, that enforcement of this subdivision (b)(27) is vested exclusively in the office of the attorney general and reporter and the director of the division[.]"). LeBlanc asserts that this claim is sufficiently plead with particularity under the TCPA, as the TCPA is "a remedial statute and is to be liberally construed to effectuate its purposes." (ECF No. 9 at 13.)

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that LeBlanc has not stated a claim under the TCPA for the alleged double drafts. In his Complaint, LeBlanc alleges that "[i]n some months two drafts were made" by

14

Bank of America for monthly mortgage payments of $769.22. (ECF No. 1-2 ¶¶ 18-19.) LeBlanc states that this constitutes "unfair and deceptive acts and practices as prohibited by the [TCPA]." (Id. at 38.) These statements, however, do not satisfy the higher pleading standard of Rule 9(b). LeBlanc does not allege during which months the alleged double payments occurred and LeBlanc does not allege how the double payments were unfair or deceptive under the TCPA. Additionally, assuming that LeBlanc intends to rely on the "catch-all provision" of the TCPA, there is no longer a private right of action for violations of that section. See Tenn. Code Ann. § 47-18-104(b)(27); see also Malone v. U.S. Bank Nat'l Ass'n, No. 12-3019-STA, 2013 WL 392487, at *5 (W.D. Tenn. Jan. 30, 2013). Accordingly, LeBlanc's TCPA claim based on the alleged double drafts is DISMISSED WITH PREJUDICE.

### 2. Failure to Cooperate

LeBlanc asserts that Defendants failed to cooperate in the loan modification process and the following related acts by Defendants constitute unfair and deceptive acts and practices prohibited by the TCPA:

> [B]eing unresponsive to countless inquiries about the status of Mr. LeBlanc's permanent loan modification; requiring Mr. LeBlanc to send the same documents over and over again; misleading Mr. LeBlanc about the recalculation of his loan payments; arbitrarily denying his permanent loan modification; and failing to articulate any understandable reason for denying the permanent loan modification . . . .

(Compl., ECF No. 1-2, ¶ 39.)  Bank of America argues that
LeBlanc cannot state a claim pursuant to the TCPA for Bank of
America's alleged failure to cooperate in the loan modification
process because the TCPA does not apply to credit terms of a
transaction.  (ECF No. 5-1 at 7.)  In support, Bank of America
quotes Tennessee Code Annotated Section 47-18-111(a)(3), which
states that "[t]he provisions of [the TCPA] shall not apply to
. . . [c]redit terms of a transaction which may be otherwise
subject to the provisions of [the TCPA]."  (Id. at 8-9.)  Bank
of America states that neither the terms of the Note nor the
Deed of Trust require Bank of America to offer loan
modifications or reduced payments.  (Id. at 9.)  Accordingly,
Bank of America argues that its alleged failure to cooperate is
"related to terms of . . . the extension of credit because such
actions or statements would be modifications of the Note and
[Deed of Trust]."  (Id. (alteration in original) (internal
quotation marks omitted) (citing Knowles v. Chase Home Fin.,
LLC, No. 1:11-cv-01051-JDB-egb, 2012 U.S. Dist. LEXIS 166748, at
*24-25 (W.D. Tenn. Aug. 2, 2012)).)  LeBlanc asserts that this
claim arises out of the performance of the servicing of the loan
and not out of the extension of credit.  (ECF No. 9 at 11
(quoting Humphreys, 2012 WL 1022988, at *10) (citing Beard v.
Worldwide Mortg. Corp., 354 F. Supp. 2d 789, 815 (W.D. Tenn.
2005)).)

16

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that LeBlanc has not stated a claim under the TCPA for Defendant's alleged failure to cooperate in the loan modification process.  There is no cause of action under the TCPA related to loan-modification proceedings as they are considered to arise out of the extension of credit.  See Silvestro v. Bank of Am., N.A., No. 3-13-0066, 2013 WL 1149301, at *5 (M.D. Tenn. Mar. 19, 2013); Knowles, 2012 U.S. Dist. LEXIS 166748, at *24-25.  Accordingly, LeBlanc's TCPA claim based on Bank of America's alleged failure to cooperate in the loan modification process is DISMISSED WITH PREJUDICE.

### 3. Delayed Notification

LeBlanc asserts that Defendants' act of "delaying notification about [sic] status of [sic] permanent loan modification while forging ahead with foreclosure procedures constitutes an unfair and deceptive practice" prohibited by the TCPA.  (Compl., ECF No. 1-2, ¶ 40.)  Bank of America argues that LeBlanc cannot state a claim pursuant to the TCPA for Bank of America's alleged failure to provide notification during the foreclosure process because the TCPA does not apply to foreclosure disputes.  (ECF No. 5-1 at 7-8.)  In support, Bank of America cites cases that have held that the TCPA does not apply to claims arising out of the foreclosure process.  (Id. at 8 (citing Pursell v. First American National Bank, 937 S.W.2d 838, 842 (Tenn. 1996), and Launius v. Wells Fargo Bank, N.A.,

No. 3:09-CV-501, 2010 WL 3429666, at *15-18 (E.D. Tenn. Aug. 27, 2010)).)  LeBlanc argues that cases holding that the TCPA does not apply to claims arising out of the foreclosure process misinterpret Pursell and should not be followed by this Court. (ECF No. 9 at 8.)

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that LeBlanc has not stated a claim under the TCPA for Bank of America's delayed notification of the status of the loan modification during foreclosure proceedings. In Pursell, the Tennessee Supreme Court held that the TCPA did not extend to a "dispute [that] arose over repossession of the collateral securing a loan."  937 S.W.2d at 842.  Since Pursell district courts have "consistently held that a lender's actions related to foreclosure and debt-collection, even when it is also pursuing loan modification, are not covered under the TCPA." Knowles, 2012 U.S. Dist. LEXIS 166748, at *23; see Malone, 2013 WL 392487, at *5; Gilliard v. Recontrust Co., N.A., No. 1:11-cv-331, 2012 WL 4442525, at *7-8 (E.D. Tenn. Sept. 25, 2012); Vaughter v. BAC Home Loans Servicing, LP, No. 3:11-cv-00776, 2012 WL 162398, at *5-6 (M.D. Tenn. Jan. 19, 2012); Paczko v. Suntrust Mortgs., Inc., M2011-02528-COA-R3-CV, 2012 WL 4450896, at *2 (Tenn. Ct. App. Sept. 25, 2012).  Accordingly, LeBlanc's TCPA claim based on Bank of America's delayed notification of the status of the loan modification during foreclosure proceedings is DISMISSED WITH PREJUDICE.

### 4. Failure to Honor Promise

LeBlanc asserts that "Defendants' acts in promising [LeBlanc] a permanent loan modification and then reneging on that promise constitute unfair or deceptive acts and practices" prohibited by the TCPA.  (Compl., ECF No. 1-2, ¶ 41.)  Bank of America argues that because the TCPA does not apply to credit terms of a transaction, "any alleged actions or statements concerning a loan modification are 'related to terms of . . . the extension of credit.'"  (ECF No. 5-1 at 9 (alteration in original).)  LeBlanc argues that this claim arises under the performance of the servicing of the loan and not from the extension of credit.  (ECF No. 9 at 11 (citing Beard, 354 F. Supp. 2d at 815).)

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that LeBlanc has not stated a claim under the TCPA for Bank of America's alleged failure to honor its promise to LeBlanc.  There is no cause of action under the TCPA related to loan-modification proceedings as they are considered to arise out of the extension of credit.  See Silvestro, 2013 WL 1149301, at *5; Knowles, 2012 U.S. Dist. LEXIS 166748, at *24-25.  Accordingly, LeBlanc's TCPA claim based on Bank of America's alleged failure to honor its promise is DISMISSED WITH PREJUDICE.

In summary, all of LeBlanc's TCPA claims are dismissed with prejudice.  Therefore, Bank of America's Motion to Dismiss is GRANTED as to LeBlanc's TCPA claims.

## C. Breach-of-Contract Claims

In order to establish a breach-of-contract claim under Tennessee law, a plaintiff must prove "(1) the existence of a contract, (2) breach of the contract, and (3) damages [that] flow from the breach."  Hinton v. Wachovia Bank of Del. Nat'l Ass'n, 189 F. App'x 394, 398 (6th Cir. 2006) (alteration in original) (quoting Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd., 79 F.3d 496, 514 (6th Cir. 1996)) (internal quotation marks omitted).  An enforceable contract "result[s] from a meeting of the minds of the parties in mutual assent to [its] terms."  Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 524 (Tenn. 2005) (internal quotation marks omitted).

LeBlanc asserts that Bank of America breached "a contractual agreement between them . . . that he would receive a permanent loan modification if he successfully completed a trial forbearance agreement" and then failing to give LeBlanc a permanent loan modification.  (Compl., ECF No. 1-2, ¶ 45.) LeBlanc further asserts that by engaging in this behavior, Bank of America "breached the common law covenant of good faith and fair dealing in conjunction with their contractual obligations in servicing the mortgage."  (Id. ¶ 46.)

20

LeBlanc's claims are addressed in turn.

### 1. Permanent Loan Modification

Bank of America asserts that LeBlanc cannot state a breach-of-contract claim based on Bank of America's failure to give LeBlanc a permanent loan modification because the Trial Period Plan (the "TPP") relating to the modification process is not properly before the court.  (ECF No. 5-1 at 12.)  Bank of America further argues that LeBlanc cannot state a claim for a breach of contract because the TPP is not an enforceable contract and because any oral agreement to offer LeBlanc a permanent loan modification is barred by the statute of frauds. (Id. at 12-15.)

The Court first addresses whether the TPP is properly before this Court.  The Court then addresses whether the TPP is an enforceable contract.  The Court finally addresses whether the alleged oral agreement to offer Plaintiff a permanent loan modification is barred by the statute of frauds.

### a. The TPP Is Properly Before this Court.

Bank of America argues that the TPP is not properly before this Court because LeBlanc did not attach the TPP to his Complaint.  (ECF No. 5-1 at 12.)  In support, Bank of America cites Tennessee Rule of Civil Procedure 10.03, which states that "[w]henever a claim . . . is founded upon a written instrument . . . a copy of such instrument or the pertinent parts thereof

21

shall be attached to the pleading as an exhibit." (<u>Id.</u> (citing Tenn. R. Civ. P. 10.03).)

Pursuant to Rule 12(d), however, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Accordingly, in analyzing a Rule 12(b)(6) motion to dismiss, "a court may consider exhibits attached [to the complaint]" including "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims therein." <u>Rondigo</u>, 641 F.3d at 680-81 (alteration in original) (quoting <u>Bassett</u>, 528 F.3d at 430) (internal quotation marks omitted).

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that the TPP is properly before it. Bank of America has attached the TPP signed by LeBlanc to its Motion to Dismiss (<u>see</u> ECF No. 5-4); it can be easily inferred from the Complaint that LeBlanc's references to the temporary loan modification are references to the TPP (<u>see, e.g.</u>, ECF No. 1-2 ¶¶ 18, 45); and the TPP is central to LeBlanc's breach-of-contract claim, <u>see</u> <u>Rondigo</u>, 641 F.3d at 680-81. Accordingly, the Court may consider the TPP in analyzing Bank of America's Motion to Dismiss.[6]

---

[6] Additionally, considering this document will not convert Bank of America's Motion to Dismiss into a motion for summary judgment. <u>See</u> <u>Peoples v. Bank of America</u>, No. 11-2863-STA, 2012 WL 601777, at *4 (W.D. Tenn. Feb. 22, 2012).

### b. The TPP Is Not an Enforceable Contract.

Bank of America states that the TPP is not a contract because "the TPP makes clear that [LeBlanc] is not guaranteed a permanent modification." (ECF No. 5-1 at 12.)  The TPP is instead an agreement that contains certain conditions that, if met, "trigger the formation of a contract to permanently modify the loan." (Id.)  Bank of America asserts that LeBlanc cannot state a claim on the basis of the TPP because LeBlanc has failed to plead that he met all of the conditions in the TPP. (Id.)

LeBlanc argues that the TPP agreement is itself a contract because the TPP agreement constituted an offer he accepted the offer by signing the TPP agreement. (ECF No. 9 at 15 (citing Darcy v. CitiFinancial, Inc., No. 1:10-cv-848, 2011 WL 3758805, at *5-6 (W.D. Mich. Aug. 25, 2011)).)

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that LeBlanc has not stated a breach-of-contract claim under the TPP.  First, the agreement to modify LeBlanc's mortgage under the TPP appears to the Court to be based on LeBlanc fulfilling certain conditions.  As a result, failure to fulfill the conditions of the TPP would result in Bank of America having no liability pursuant to the TPP.  See Real Estate Mgmt., Inc. v. Giles, 293 S.W.2d 596, 599 (Tenn. Ct. App. 1956) (holding that liability did not attach to a contract "because the conditions prerequisite to liability were never fulfilled").  The TPP states that LeBlanc's loan will "not be

23

modified unless and until (i) [LeBlanc] meet[s] all the
conditions required for modification, (ii) [LeBlanc] receive[s]
a fully executed copy of a Modification Agreement, and (iii) the
Modification Effective Date has passed." (See ECF No. 5-4 at
PageID 96.)  LeBlanc's entitlement to the modification of his
loan is therefore based on LeBlanc meeting these specific
conditions.  Second, LeBlanc's Complaint does not allege any
facts allowing the Court to infer that he met the necessary
conditions for the permanent modification of his loan.  LeBlanc
alleges only that he was told that he would receive a
modification of his loan.  (See ECF No. 1-2 ¶ 22.)  Because
LeBlanc has failed to plead that he satisfied the conditions
necessary for the liability to attach to the TPP, see Giles, 293
S.W.2d at 599, LeBlanc has not satisfied the pleading standard
for a material element of his breach-of-contract claim based on
the TPP.  See Wittstock, 330 F.3d at 902.  Accordingly,
LeBlanc's breach-of-contract claim, insofar as it is based on
the TPP, is DISMISSED WITH PREJUDICE.

### c. The Oral Agreement Is Not Enforceable.

Bank of America argues that if LeBlanc intends to base his
breach-of-contract claim on the alleged oral promise to modify
LeBlanc's loan made by a Bank of America representative over the
phone, the claim is barred by the Tennessee statute of frauds.
(ECF No. 5-1 at 13.)  LeBlanc argues that the oral agreement is
not barred by the statute of frauds because he partially

24

performed on the oral agreement and because the doctrine of equitable estoppel should be applied to this case.  (ECF No. 9 at 16-19.)

In Tennessee, contracts do not need to be in writing to be enforceable.  See Burton v. Warren Farmers Coop., 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002).  Under the Tennessee statute of frauds, however, certain "contracts are not considered valid and enforceable unless they are memorialized in a writing."  Rhynes, 2013 U.S. Dist. LEXIS 42713, at *24-25 (citing Shah v. Racetrac Petroleum Co., 338 F.3d 557, 573 (6th Cir. 2003)).

The Court first addresses whether the alleged oral contract falls within the statute of frauds.  The Court then addresses whether LeBlanc has demonstrated that the oral agreement is not barred under the statute of frauds based on his partial performance.  The Court finally addresses whether the doctrine of equitable estoppel should apply in this case.

### i. Tennessee Statute of Frauds

Bank of America asserts that a claim based on the alleged oral statement to modify LeBlanc's loan is barred under the Tennessee statute of frauds as the contract is of the type that must be in writing pursuant to both Tennessee Code Annotated Section 29-2-101(a)(4) and Section 29-2-101(b)(1).  (ECF No. 5-1 at 13-14.)  Under Tennessee Code Annotated Section 29-2-101(a), "[n]o action shall be brought . . . [u]pon any contract for the

25

sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year . . . unless the promise or agreement . . . shall be in writing, and signed by the party to be charged therewith." Tenn. Code Ann. §§ 29-2-101(a)(4)-(5). Tennessee courts have interpreted mortgages and deeds of trust as "an interest in land and[,] as such[,] within the meaning of the Statute of Frauds." See Lambert v. Home Fed. Sav. & Loan Ass'n, 481 S.W.2d 770, 772-73 (Tenn. 1972). Under Tennessee Code Annotated Section 29-2-101(b),

> "[n]o action shall be brought against a lender or creditor . . . upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any . . . agreement or commitment to lend money or extend credit, unless the promise or agreement . . . shall be in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor."

Tenn. Code Ann. § 29-2-101(b)(1).

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that the alleged oral agreement falls within the statute of frauds because it is a "commitment to . . . modify . . . [an] agreement or commitment to lend money or extend credit." Tenn. Code Ann. § 29-2-101(b)(1); see Williams v. SunTrust Mortg., Inc., No. 3:12-CV-477, 2013 WL 1209623, at *3 (E.D. Tenn. Mar. 25, 2013). Accordingly, LeBlanc may only bring a breach-of-contract claim based on the oral agreement if

he can demonstrate that one of the exceptions to the statute of frauds applies.

### ii. Part Performance

LeBlanc argues that the statue of frauds does not bar his breach-of-contract claim based on the oral agreement to modify his loan because he has partly performed on the oral agreement. (ECF No. 9 at 16.)  LeBlanc asserts that the Bank of America representative told him that if he stopped making mortgage payments, Bank of America "would offer him a permanent modification." (Id. at 19.)  Accordingly, LeBlanc asserts that his action in stopping his mortgage payments constitutes partial performance on the oral agreement. (Id.)

Partial performance on a contract can constitute an exception to the writing requirement for a contract that falls within the statute of frauds.  See Jarrett v. Epperly, 896 F.2d 1013, 1018 (6th Cir. 1990); see also Lomax v. Jackson-Madison Cnty. Gen. Hosp. Dist., No. 02A01-9706-CH-00116, 1997 WL 33760893, at *2 (Tenn. Ct. App. Oct. 31, 1997).  The doctrine of partial performance

> is purely an equitable doctrine and is a judicial interpretation of the acts of the parties to prevent frauds. . . .  The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his

27

contract, so far to alter his position as to incur an unjust and unconscious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense.

Upperline Equip. Co. v. J & M, Inc., 724 F. Supp. 2d 883, 890 (E.D. Tenn. 2009) (emphasis added) (quoting Buice v. Scruggs Equip. Co., 250 S.W.2d 44, 48 (Tenn. 1952)) (internal quotation marks omitted); accord Schnider v. Carlisle Corp., 65 S.W.3d 619, 622 (Tenn. Ct. App. 2001).  This doctrine, however, is not applied to situations in which "it could easily result in the exception of partial performance swallowing the rule of the Statute of Frauds, and allowing the proliferation of those very evils that the Statute was created to guard against." Shedd v. Gaylord Entm't Co., 118 S.W.3d 695, 698 (Tenn. Ct. App. 2003).

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that LeBlanc has not sufficiently pled that he partially performed on the oral agreement to modify his loan.  An assertion of part performance as an exception to the statute of frauds is essentially a claim that the defendant engaged in fraudulent conduct by making a "representation that [it] proposed to stand by [its] agreement" and then did not stand by its agreement despite its representation.  Accordingly, an assertion of partial performance "sounds in fraud," Ind. State Dist. Council of Laborers v. Omnicare, Inc., 583 F.3d 935, 948 (6th Cir. 2009), and the heightened pleading standard

28

articulated in Rule 9(b) applies to the allegedly fraudulent conduct of Bank of America.  Because LeBlanc does not plead with particularity when the alleged promise was made or who specifically made the alleged promise, LeBlanc has not met the heightened pleading standard of Rule 9(b).  See Republic Bank, 683 F.3d at 247.

### iii. Equitable Estoppel

LeBlanc argues that the statue of frauds does not bar his breach-of-contract claim based on the oral agreement to modify his loan because he has stated all the elements of equitable estoppel in his Complaint.  (ECF No. 9 at 19.)

Equitable estoppel can constitute an exception to the writing requirement for a contract that falls within the statute of frauds.  See Jarrett, 896 F.2d at 1018.  Under the doctrine of equitable estoppel, the party asserting the doctrine must show the following elements as to the non-asserting party:

> (1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) [i]ntention, or at least expectation that such conduct shall be acted upon by the other party; (3) [k]nowledge, actual or constructive of the real facts.

Osborne v. Mountain Life Ins. Co., 130 S.W.3d 769, 774 (Tenn. 2004) (internal quotation marks omitted); accord Carbon Processing, 823 F. Supp. 2d at 825.  The asserting party must

also demonstrate their own "(1) [l]ack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) [r]eliance upon the conduct of the party estopped; and (3) [a]ction based thereon of such a character as to change his position prejudicially." Osborne, 130 S.W.3d at 774 (internal quotation marks omitted); accord Carbon Processing, 823 F. Supp. 2d at 825. This doctrine applies only in "exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud." Jarrett, 896 F.2d at 1018-19 (emphasis added) (quoting Baliles v. Cities Serv. Co., 578 S.W.2d 621, 624 (Tenn. 1979)) (internal quotation marks omitted); accord Davidson v. Wilson, No. M2009-01933-COA-R3-CV, 2010 WL 2482332, at *8 (Tenn. Ct. App. June 18, 2010).

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that LeBlanc has not sufficiently pled the elements necessary to raise equitable estoppel as a defense to the statute of frauds. Pursuant to Tennessee law, equitable estoppel applies only in "exceptional cases" where the conduct complained of "verg[es] on actual fraud." Baliles, 578 S.W.2d at 624. As a result, an assertion of equitable estoppel as an exception to the statute of frauds "sound[s] in fraud," Omnicare, 583 F.3d at 948, and the heightened pleading standard articulated in Rule 9(b) applies to the allegedly fraudulent

30

statement, see Cataldo v. U.S. Steel Corp., 676 F.3d 542, 553
(6th Cir. 2012); Edwards v. Alcoa, Inc., No. 3:12-03-DCR, 2013
WL 589213, at *5 (E.D. Ky. Feb. 14, 2013); see also Barnes &
Noble, Inc. v. LSI Corp., 849 F. Supp. 2d 925, 940-41 (N.D. Cal.
2012).  Because LeBlanc does not plead with particularity when
the alleged promise was made or who specifically made the
alleged promise, LeBlanc has not met the heightened pleading
standard of Rule 9(b).  See Republic Bank, 683 F.3d at 247.

In summary, LeBlanc's breach-of-contract claim based on the
oral agreement to permanently modify LeBlanc's loan is DISMISSED
WITH PREJUDICE.

### 2. Good Faith and Fair Dealing

LeBlanc asserts that "Defendants breached the common law
covenant of good faith and fair dealing in conjunction with
their contractual obligations in servicing the mortgage."
(Compl., ECF No. 1-2, ¶ 46.)  Bank of America argues that,
because "a breach of the implied covenant of good faith and fair
dealing is not an independent basis for relief" under Tennessee
law, LeBlanc does not state a breach-of-contract claim on this
ground.  (ECF No. 5-1 at 15 (citing Weese v. Wyndham Vacation
Resorts, No. 3:07-CV-433, 2009 WL 1884058, at *5 (E.D. Tenn.
June 30, 2009)).)

Viewing LeBlanc's allegations in the light most favorable
to him, the Court finds that LeBlanc has not stated a breach-of-

contract claim for a breach of the covenant of good faith and
fair dealing.  It is well-settled under Tennessee law that a
"breach of the implied covenant of good faith and fair dealing
is not an independent basis for relief, but rather 'may be an
element or circumstance of . . . breaches of contracts.'"
Upperline Equip., 724 F. Supp. 2d at 892 (quoting Solomon v.
First Am. Nat'l Bank of Nashville, 774 S.W.2d 935, 945 (Tenn.
Ct. App. 1989)); see also BKB Properties, LLC v. SunTrust Bank,
No. 3:08-cv-00529, 2009 WL 529860, at *8 (M.D. Tenn. Mar. 2,
2009) aff'd, 453 F. App'x 582 (6th Cir. 2011).  Because LeBlanc
has failed to sufficiently plead a breach-of-contract claim
against Bank of America, see supra pp. 20-31, LeBlanc cannot
state a basis for a breach-of-contract claim based on a breach
of the covenant of good faith and fair dealing.  Accordingly,
LeBlanc's breach-of-contract claim based on the covenant of good
faith and fair dealing is DISMISSED WITH PREJUDICE.

　　　In summary, all of LeBlanc's breach-of-contract claims are
dismissed with prejudice.  Therefore, Bank of America's Motion
to Dismiss is GRANTED as to LeBlanc's breach-of-contract claims.

### D. Promissory-Estoppel Claim

　　　In Tennessee, "[p]romissory estoppel is based on a promise
which the promisor should reasonably expect to induce action or
forbearance on the part of the promisee or a third person and
which does induce such action or forbearance is binding if

injustice can be avoided only by enforcement of the promise." Barnes & Robinson Co. v. OneSource Facility Servs., Inc., 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006) (quoting Calabro v. Calabro, 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999)) (internal quotation marks omitted).  In order to state a claim for promissory estoppel, a plaintiff must show "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment."  Chavez v. Broadway Elec. Serv. Corp., 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007).  The doctrine of promissory estoppel is limited to "exceptional cases where a defendant's conduct is akin to fraud."  Grona v. CitiMortgage, Inc., No.3-12-0039, 2012 WL 1108117, at *4 (M.D. Tenn. Apr. 2, 2012) (emphasis added); see Barnes & Robinson, 195 S.W.3d at 645.

LeBlanc asserts that Bank of America's representative made a promise to LeBlanc that his loan payments were "being recalculated and that he should stop making payments until he was instructed on the amount of the new payments under the permanent loan modification" (Compl., ECF No. 1-2, ¶ 48); that he relied on this "promise to his detriment" (id. ¶ 50); and that, had the representative not made this promise, he would have continued to make payments and would not have defaulted on his mortgage (id. ¶ 51).

Bank of America argues that LeBlanc cannot state a claim on which relief can be granted because promissory estoppel is "only available where there is no valid contract between the parties"; Bank of America's actions are not "akin to fraud"; and LeBlanc's claim is barred by the statute of frauds because an oral promise to modify a loan requires a signed writing to be enforceable. (ECF No. 5-1 at 16-17.)

LeBlanc argues that he has asserted a plausible claim for promissory estoppel based on Vaughter, 2012 WL 162398. (ECF No. 9 at 21-22.)  In Vaughter, the court held that the plaintiffs had alleged a plausible promissory-estoppel claim where the plaintiffs asserted that the defendant promised the plaintiffs "that if they stopped making payments and submitted the required paperwork, then [they] would be provided with some type of loan modification offer"; the plaintiffs alleged that "they relied on [the] promise in that they stopped making payments and put forth time and money into the modification promise"; and that the plaintiffs were harmed because their credit was negatively impacted.  2012 WL 162398, at *8-9 (internal quotation marks omitted).

Viewing LeBlanc's allegations in the light most favorable to him, the Court finds that LeBlanc cannot raise a promissory-estoppel claim.  Generally, promissory-estoppel claims are only available where there is no valid contract between the parties. See Sparton Tech., Inc. V. Util-Link, LLC, 248 F. App'x 684,

34

689-90 (6th Cir. 2007); Grona, 2012 WL 1108117, at *4 (stating
that promissory-estoppel claims "are only available where there
is no valid contract between the parties); see also Tennessee
Supreme Court's Order on Rule 23 Certified Questions of Law at
PageID 6008-09, Carbon Processing & Reclamation, LLC v. Valero
Mktg. & Supply Co., No. 09-2127-STA (W.D. Tenn. Mar. 12, 2012),
ECF No. 203.  An exception to this general rule exists only
where the "claim of promissory estoppel was advanced to expand
the terms of, not change the terms of, an existing contract."
Sparton Tech., 248 F. App'x at 690 (citing Bill Brown Constr.
Co. v. Glens Falls Ins. Co., 818 S.W.2d 1, 9-11 (Tenn. 1991)).
In this case, there is a valid contract between the parties, the
Deed of Trust, that LeBlanc is seeking to change the terms of
through a permanent loan modification.  Accordingly, LeBlanc's
claim of promissory estoppel seeks to change the terms of an
existing contract and is therefore barred.  See Sparton Tech.,
248 F. App'x at 690.

    Alternatively, LeBlanc has not stated a promissory-estoppel
claim because LeBlanc has not alleged any facts indicating that
Bank of America's actions are "akin to fraud."  Grona, 2012 WL
1108117, at *4.  In his Complaint, LeBlanc does not assert when
the alleged promise was made or who specifically made the
alleged promise, as required by Rule 9(b) in pleading fraud.
See Republic Bank, 683 F.3d at 247; see also Doe v. Univ.of the
South, 687 F. Supp. 2d 744, 763 (E.D. Tenn. 2009) (holding that

the plaintiffs had failed to raise a viable promissory estoppel claim where they did not plead "facts to support a finding that the [defendant's] conduct is the equivalent to fraud"). Accordingly, LeBlanc's promissory-estoppel claim is DISMISSED WITH PREJUDICE.

Bank of America's Motion to Dismiss is GRANTED as to LeBlanc's promissory-estoppel claim.[7]

### E. Negligent-Misrepresentation Claim

In order to state a claim for negligent misrepresentation in Tennessee, a "plaintiff must establish 'that [1] the defendant supplied information to the plaintiff; [2] the information was false; [3] the defendant did not exercise reasonable care in obtaining or communicating the information[;] and [4] the plaintiffs justifiably relied on the information.'" Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008) (quoting Williams v. Berube & Assocs., 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)). Under Tennessee law, claims for negligent misrepresentation fall within the higher pleading requirements of Rule 9(b). See Marshall v. ITT Tech. Inst., No. 3:11-CV-552, 2012 WL 1205581, at *3 (E.D. Tenn. Apr. 11, 2012); Humphreys, 2012 WL 1022988, at *14; Western Express, Inc. v. Brentwood Servs., Inc., No. M2008-02227-COA-R3-CV, 2009 WL 3448747, at *10 (Tenn. Ct. App. Oct. 26, 2009).

---

[7] The Court need not reach the issue of whether the statute of frauds bars LeBlanc's promissory-estoppel claim, an issue that has not yet been resolved by the Tennessee courts. See Carbon Processing, 823 F. Supp. 2d at 818-24.

LeBlanc asserts that: (1) "the [Bank of America]
representative, acting in the course of her employment, provided
faulty information" intended to "guide [] LeBlanc in his attempt
to obtain a permanent loan modification" (Compl., ECF No. 1-2,
¶ 53); (2) the "representative failed to exercise reasonable
care in providing and/or communicating the information" to
LeBlanc (id. ¶ 54); and (3) LeBlanc "justifiably relied upon the
information provided by the . . . representative" (id. ¶ 55).

Bank of America argues that LeBlanc has failed to state a
claim for negligent misrepresentation because LeBlanc fails to
satisfy the higher pleading standard of Rule 9(b).  (ECF No. 5-1
at 18.)  In support, Bank of America states that LeBlanc does
not identify the faulty information to which he is referring and
does not state with particularity the "time, place, and content
of the alleged misrepresentation."  (Id.)  LeBlanc argues that
the facts alleged and the "reasonable inferences drawn [from
those facts], are sufficient to state misrepresentations about
existing facts and to make [out] a claim of negligent
misrepresentation that is plausible on its face."  (ECF No. 9 at
23.)

Viewing LeBlanc's allegations in the light most favorable
to him, the Court finds that LeBlanc has not stated a claim for
negligent misrepresentation.  In his Complaint, LeBlanc asserts
that a representative of Bank of America gave LeBlanc false
information during a conversation between LeBlanc, the FCDC

37

Housing Counselor, and the representative.  (ECF No. 9 ¶¶ 22, 53.)  While LeBlanc sufficiently alleges the "content of the alleged misrepresentation," LeBlanc does not plead with particularity when the alleged promise was made or who specifically made the alleged promise, as is necessary under Rule 9(b).  See Republic Bank, 683 F.3d at 247.  As a result, LeBlanc has not alleged with particularity a material element of negligent misrepresentation.  See Wittstock, 330 F.3d at 902.  Accordingly, LeBlanc's negligent-misrepresentation claim is DISMISSED WITH PREJUDICE.

Bank of America's Motion to Dismiss is GRANTED as to LeBlanc's negligent-misrepresentation claim.

**V. CONCLUSION**

For the foregoing reasons, Bank of America's Motion to Dismiss is DENIED IN PART as to LeBlanc's TILA claim; and GRANTED IN PART as to LeBlanc's TCPA, breach-of-contract, promissory-estoppel, and negligent-misrepresentation claims.  Accordingly, all of LeBlanc's claims other than his TILA claim are DISMISSED WITH PREJUDICE.

**SO ORDERED** this 18th day of June, 2013.

s/ Jon P. McCalla
JON P. McCALLA
CHIEF U.S. DISTRICT JUDGE